IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALISA J. THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:13-cv-686-PMW<br><br><br>Magistrate Judge Paul M. Warner |

All parties in this case have consented to United States Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court is Wells Fargo Bank, N.A.'s ("Defendant") motion to dismiss.[2]  The court held oral argument on the motion on November 26, 2013.[3]  Michele Anderson-West appeared on behalf of Alisa J. Thomas ("Plaintiff"), and M. Lane Molen appeared on behalf of Defendant.  At the conclusion of the hearing, the court took the motion under advisement.  The court has carefully considered the parties' written submissions on the motion, as well as the oral arguments presented by counsel at the hearing.  Now being fully advised, the court is prepared to rule on the motion.

---

[1] *See* docket no. 13.

[2] *See* docket no. 11.

[3] *See* docket no. 22.

## BACKGROUND

The following facts are taken from Plaintiff's complaint and viewed in the light most favorable to Plaintiff. *See Jordan-Arapahoe, LLP v. Bd. of County Comm'rs,* 633 F.3d 1022, 1025 (10th Cir. 2011) (providing that when considering a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff").

Plaintiff owns real property in Riverton, Utah, that she uses as her personal residence ("Residence"). Plaintiff also owns rental property in Midvale, Utah ("Rental Property"). On January 30, 2013, Plaintiff applied to refinance the Residence and the Rental Property through America First Credit Union ("America First"). America First obtained Plaintiff's credit profile through CoreLogic Credco, LLC ("CoreLogic"). That credit profile contained credit scores from the following credit reporting agencies: Equifax Information Services, Inc. ("Equifax"); Experian Solutions, LLC; and Trans Union ("Trans Union") (collectively, "CRAs"). Based on her credit profile and credit scores, Plaintiff was offered an interest rate of 3.5% to refinance the Residence.

On May 6, 2013, in anticipation of the closing of Plaintiff's refinancing of the Residence, America First obtained an updated credit profile for Plaintiff. That profile contained a delinquent account with Defendant reported by both Equifax and Trans Union. However, the delinquent account did not belong to Plaintiff. Because of the delinquent account, Plaintiff's credit scores dropped and, consequently, America First notified Plaintiff that it could not proceed with the closing.

Plaintiff then visited one of Defendant's branch offices to inquire about the delinquent account.  After some investigation, Plaintiff discovered that the delinquent account belonged to her mother, who had recently filed for bankruptcy.  Plaintiff alleges that Defendant placed the account on Plaintiff's credit profile after learning of Plaintiff's mother's bankruptcy.  Plaintiff contends that this was an attempt by Defendant to coerce payment on the account from Plaintiff.

At the branch office, Plaintiff was told that nothing more could be done with respect to the delinquent account and was instructed to send a written dispute letter to Defendant.  Plaintiff sent the dispute letter on May 7, 2013.  Plaintiff also sent a letter to CoreLogic on May 7, 2013, along with the information concerning her mother's bankruptcy filing.  On or about the same date, Plaintiff contacted Equifax and Trans Union directly to advise them of the reporting error and to ask them to remove the inaccurate information from her credit profiles.  Equifax and Trans Union researched the delinquent account, found it to be an error, and deleted it from Plaintiff's credit profiles on or about May 17, 2013.

On June 10, 2013, America First obtained yet another updated credit profile for Plaintiff.  Based on that profile, America First notified Plaintiff that it could go forward with the closing of Plaintiff's refinancing of the Residence.  However, because interest rates had risen, Plaintiff closed her refinancing of the Residence at an interest rate of 4.676%, instead of the originally quoted rate of 3.5%.  Plaintiff contends that the increased interest rate was the result of Defendant's inaccurate reporting of the delinquent account and that she will be required to pay additional money over the life of the refinanced loan.  Plaintiff further alleges that the reporting error caused her to lose the ability to refinance the Rental Property at a lower interest rate, which will require her to pay additional money over the life of the new loan on the Rental Property.

Plaintiff filed her complaint in this case on July 25, 2013.[4]  Plaintiff alleges two causes of action for violations for the Utah Consumer Sales Practices Act ("UCSPA"), *see* Utah Code §§ 13-11-1 *et seq*.  In response to Plaintiff's complaint, Defendant filed its motion to dismiss.[5]

## LEGAL STANDARDS

Defendant's motion seeks dismissal of Plaintiff's complaint under rule 12(b)(6) for failure to state claims upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).

## ANALYSIS

In its motion to dismiss, Defendant argues, among other things, that Plaintiff's claims under the UCSPA must fail because (1) the UCSPA does not apply in this case because the alleged conduct is governed by the Fair Credit Reporting Act ("FCRA"), *see* 15 U.S.C. §§ 1681 *et seq*.; and (2) the FCRA expressly preempts Plaintiff's claims under the UCSPA.  The court will address those arguments in turn.

---

[4] *See* docket no. 2.

[5] *See* docket no. 11.

4

### I.  UCSPA and FCRA

Defendant first argues that Plaintiff's claims under the UCSPA must fail because the wrongful conduct alleged by Plaintiff is governed by the FCRA.  The court agrees.

The UCSPA expressly provides that it "does not apply to . . . an act or practice required or specifically permitted by or under federal law, or by or under state law."  Utah Code § 13-11-22(1)(a).  Accordingly, to the extent that Plaintiff's claims in this case are governed by any other state or federal law, they cannot be brought under the UCSPA.  *See, e.g.*, *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1150 (10th Cir. 2013) (noting that the Utah Supreme Court "has ruled that a USCPA claim is barred when the complained-of conduct was governed by other, more specific law" (citing *Carlie v. Morgan*, 922 P.2d 1 (Utah 1996))).

In this case, Plaintiff alleges wrongful conduct by Defendant for reporting incorrect credit information to the CRAs.  As noted by Defendant, the FCRA is a statutory scheme that regulates, among other things, the furnishing of credit information.  *See, e.g.*, *Fishback v. HSBC Retail Servs.*, 944 F. Supp. 2d 1098, 1107 (D.N.M. 2013) ("The FCRA places certain duties upon furnishers of credit information.").  Accordingly, the UCSPA does not apply in this case by virtue of the express limitation referenced above.  The alleged misconduct in this case is governed by a more specific law, the FCRA, because that alleged misconduct involves the furnishing of credit information by Defendant.

In response to Defendant's argument, Plaintiff admits that the FRCRA imposes a duty upon entities that furnish information to the CRAs to report accurate information.  *See* 15 U.S.C. § 1681s-2(a).  However, Plaintiff asserts that while the FCRA affords consumers a private right of action against entities that intentionally and negligently violate its provisions, *see id*. §§

1681n, 1681o, that right of action does not extend to furnishers. *See id*. § 1681s-2(c). Because Plaintiff did not sue the CRAs in this case, but instead sued Defendant, she contends that the FCRA does not apply. In other words, Plaintiff appears to argue that her claims under the UCSPA must survive because there is no claim available to her against Defendant under the FCRA. That argument fails. As noted by Defendant, whether Plaintiff has a viable cause of action against Defendant under the FCRA has no bearing on whether her claims under the UCSPA are barred by the UCSPA's own express limitation. The relevant question is whether Plaintiff's claims are governed by a more specific state or federal law. *See* Utah Code § 13-11-22(1)(a); *Berneike*, 708 F.3d at 1150. By admitting that the FCRA imposes duties upon the furnishers of credit information, Plaintiff has essentially conceded that the FCRA is the more specific statutory regime in this case.

For these reasons, the court concludes that both of Plaintiff's causes of action under the UCSPA are barred by the UCSPA's own express limitation and, therefore, must be dismissed.

## II.  FCRA Preemption

Defendant next argues that, even if Plaintiff's claims were not barred by the UCSPA's limitation, they are preempted by the FCRA. Again, the court agrees.

In relevant part, the FCRA provides that no requirement or prohibition may be imposed under any state law "relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). That statutory provision was addressed by the Tenth Circuit in *Pinson v. Equifax Credit Information Services, Inc*. *See* 316 Fed. App'x 744 (10th Cir. 2009). In that case, the plaintiffs sued Capital One (and other parties) under the FCRA and Oklahoma state law, alleging that Capital One had furnished false and

inaccurate information to credit reporting agencies. *See id*. at 747, 750. The *Pinson* court affirmed the district court's dismissal of the plaintiffs' state law claims, ruling that those claims were preempted by the FCRA. *See id*. at 751; *see also Anastasion v. Credit Serv. of Logan, Inc.*, No. 2:08-CV-000180-TS, 2010 U.S. Dist. LEXIS 121714, at *20-21 (D. Utah Nov. 16, 2010) (following *Pinson* and dismissing the plaintiff's UCSPA claims because they concerned the same subject matter as the FCRA and, therefore, were preempted).

In this case, both of Plaintiff's causes of action are based upon Defendant's furnishing of credit information to the CRAs. As such, they are preempted by the FCRA and, therefore, must be dismissed. *See* 15 U.S.C. § 1681t(b)(1)(F); *Pinson*, 316 Fed. App'x at 751; *Anastasion*, 2010 U.S. Dist LEXIS 121714, at *20-21.

## CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss[6] is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED**.

DATED this 20th day of February, 2014.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge

---

[6] *See* docket no. 11.